UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
HELENE MOFFATT                                                   :
                                                                 :
   Plaintiff,                                      :
                                                                 :
                                                                 : Civil Action No.
v.                                                               :
                                                                 :
ERIC ADAMS, individually and in his official                     :
capacity as Mayor of the City of New York; THE                   :
CITY OF NEW YORK, DAVID BANKS,                                   :
individually and in his official capacity as                     :
Chancellor of the New York City Public Schools;                  : **COMPLAINT AND JURY DEMAND**
KAREN STONE, individually and in her capacity as                 :
Human Resource Director of the New York City                     :
Public School; KATHY RODI, individually and in                   :
her capacity as Executive Director in the Office of              :
Employee Relations of the New York City Public                   :
Schools; ELIZABETH VLADECK, individually and                     :
in her capacity as General Counsel of the New York               :
City Public Schools; KAREN SOLIMANDO,                            :
individually and in her capacity as Executive                    :
Agency Counsel of the New York City Public                       :
Schools; DANIEL WEISBERG, , individually and                     :
in in his capacity as First Deputy Chancellor of the             :
New York City Public Schools; JUAN ROSALES,                      :
individually and in his capacity as Chief of Staff to            :
the Chancellor of the New York City Public                       :
Schools; ANASTASIA COLEMAN, individually                         :
and in her capacity as Special Commissioner of                   :
Investigation for the New York City School District;             :
NEW YORK CITY DEPARTMENT OF                                      :
EDUCATION, COUNCIL OF SCHOOL                                     :
SUPERVISORS & ADMINISTRATORS; HENRY                              :
RUBIO, ROSEMARY SINCLAIR, DAVID                                  :
GRANDWETTER,                                                     :
                                                                 :
   Defendants.                                     X
----------------------------------------------------------------

1

Plaintiffs HELENE MOFFATT, being a resident of Astoria, New York, by and through her attorneys Murray-Nolan Berutti LLC, with knowledge as to her own acts, and upon information and belief as to all others, hereby complains of defendants as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §1983 and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.

2. Venue in this matter is proper pursuant to 28 U.S.C. §1391(b)(1) because some defendants reside in the district.

## PARTIES

1. ERIC ADAMS, individually and in his official capacity as Mayor of the City of New York, maintains an address of 181 East End Avenue, New York, NY 10128, and was a state actor at all relevant times.

2. THE CITY OF NEW YORK is an incorporated City of the State of New York, with primary City offices being located at City Hall Park, New York, NY 10007

3. DAVID BANKS, individually and in his official capacity as Chancellor of the New York City Public Schools, maintains an address of 473 W. 143 Street New York, NY 10031

4. KAREN STONE, individually and in her capacity as Human Resource Director of the New York City Public Schools, and upon information and belief resides in Brooklyn, NY.

5. KATHY RODI, individually and in her capacity as Executive Director in the Office of Employee Relations of the New York City Public Schools, maintains an address of 131 Hillcrest Ave. Manhasset NY 11030.

6. ELIZABETH VLADECK, individually and in her capacity as General Counsel of the New York City Public Schools maintains an address of 826 Caton Ave., Brooklyn, NY 11218

7. KAREN SOLIMANDO, individually and in her capacity as Executive Agency Counsel of the New York City Public Schools, maintains an address of 325 W. End Ave., Apt. 8B. New York, NY

8. DANIEL WEISBERG, individually and in in his capacity as First Deputy Chancellor of the New York City Public Schools, and upon information and belief maintains an address in Brooklyn, NY.

9. JUAN ROSALES, individually and in his capacity as Chief of Staff to the Chancellor of the New York City Public Schools, and upon information and belief maintains an address in Brooklyn, NY.

10. ANASTASIA COLEMAN, individually and in her capacity as Special Commissioner of Investigation of the New York City School District, upon information and belief resides in New York, NY.

11. The NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") is an official government agency of the City of New York, and maintains an address of

12. COUNCIL OF SCHOOL SUPERVISORS & ADMINISTRATORS ("CSA") is a public trade union located at 1300 Veterans Highway, Suite 330 Hauppauge, NY 11788

13. HENRY RUBIO is President of CSA, and upon information and belief maintains an address in Brooklyn, NY.

14. ROSEMARY SINCLAIR is Vice President of CSA and maintains an address of 479 Rugby Rd Brooklyn, NY 11226.

15. DAVID GRANDWETTER is Legal Counsel to CSA and maintains an address of 62 Stanton Cir. New Rochelle NY 10804.

16. At all pertinent times, defendants Banks, Stone, Rodi, Vladeck, Solimando, Weisberg, Rosales, and Coleman were employed by defendant NYCDOE, such that they are state actors.

17. NYCDOE is alleged to be liable for the School Defendants' acts, which violated established constitutional rights of the plaintiff, Ms. Moffatt.

## FACTS PERTINENT TO ALL COUNTS

A. **Ms. Moffatt's employment with the NYCDOE.**

18. Since 2012, Ms. Moffatt was employed by the NYCDOE as the Crisis Director Administrator in Brooklyn and was in charge of managed response for 240 public schools.

19. Ms. Moffatt commenced her career with the NYCDOE as a schoolteacher commencing in 1990, a position she held until 2000. She became an Acting Assistant Principal from 2000-2001, after which she moved out of state until 2008, during which time she was a teacher, Assistant Principal, and Elementary School Literacy Coordinator in a Virginia school district.

20. Ms. Moffatt returned to the employ of the NYCDOE on July 1, 2008 and began working for the Children's First Network ("CFN") as the Director of Safety, Suspensions, Transportation, Compliance and General Education Registration.

21. In 2014, there was a systemwide reorganization and Ms. Moffatt moved to the position as Crisis Manager for all schools in the Brooklyn North Region, thus making her responsible for 240 schools.

22. Ms. Moffatt was a tenured employee and had an exemplary record throughout her employment with NYCDOE.

**B.    The COVID vaccine mandate termination events and proceedings.**

23. Upon the NYCDOE imposing a COVID-19 vaccine mandate, Ms. Moffatt applied for a religious accommodation due to her sincerely held religious beliefs which precluded her from receiving the administration of the same.

24. The vaccine mandate was not the product of a legislative enactment and, thus, was not entitled to any deference under the United States Supreme Court's ruling in *Jacobson v. Massachusetts,* 197 U.S. 11, 30-31 (1905).

25. Ms. Moffatt appealed the denial of her exemption, and an arbitration was held on October 14, 2021.

26. Ms. Moffatt contacted her union, CSA, which negligently advised her that it was unnecessary for her to hire an attorney.

27. On October 15, 2021, Ms. Moffatt was placed on leave without pay as a result of the arbitration hearing.

28. On November 19, 2021, Ms. Moffatt filed a second appeal, this time with the New York City Department of Human Capital. The second appeal was filed because the NYCDOE had lost a legal case related to the mandate, which created the second appeal opportunity for Ms. Moffatt.

29. Ms. Moffatt heard nothing about the appeal until January 7, 2022, at which time she was emailed a list of questions to respond to within five days.

30. Once again, CSA failed to advise Ms. Moffatt to retain an attorney, and the Division of Human Capital did not advise her of such right.

31. Thus, Ms. Moffatt rapidly responded to the questions in a timely fashion.

32. On March 28, 2022, Ms. Moffatt's appeal was denied based on the determination that she had failed to establish that she had a sincerely held religious belief which entitled her to an accommodation.

33. Ms. Moffatt has refused all vaccines which use human abortive tissue at any process of its creation, and the compulsory COVID vaccination would have violated every single religious belief that she has. Thus, she again refused to be vaccinated when, on March 31, 2022, she was advised that she would have to be vaccinated or would be terminated.

34. On April 7, 2022, Ms. Moffatt was terminated based on the false assertion that she was insubordinate.

35. On such date, Ms. Moffatt was also locked out of the union without notice.

36. Upon information and belief, at all times had Ms. Moffatt retained legal counsel instead of following CSA's improper advice, she would have likely fared better with respect to her efforts to have the denial of her religious exemption overturned.

37. Upon information and belief, the reason that the union provided Ms. Moffatt with no assistance and faulty advice was, in whole or in part, because she had claimed to have a religious objection to the COVID vaccines.

38. Once again, CSA was unwilling and unavailable to assist Ms. Moffatt in whole or in part because Ms. Moffatt had claimed a religious creed prevented her from taking the COVID vaccine.

39. On August 19, 2022, the initial termination decision regarding misconduct was overturned, but her voluntary separation was sustained.

40. On September 4, 2022, another properly filed appeal was made by Ms. Moffatt, which ultimately was denied.

### C. The charge of discrimination.

41. Meanwhile, on or about June 28, 2022, Ms. Moffatt filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC") claiming religious discrimination.

42. A right to sue letter was issued on December 6, 2022, after no investigation was conducted.

### D. The ongoing public employees' mandate legal challenge and the problem code.

43. During the time which Ms. Moffatt was entitled to file suit, legal cases challenging the subject vaccine mandate were ongoing.

44. On February 6, 2024, Mayor Adams ended the public employees' vaccine mandate.

45. On February 8, 2023, before the expiration of Ms. Moffatt's right to sue period, during the Second Circuit Court of Appeals hearing, attorney John Bursch made it known that on about February 9, 2022, the New York City Department of Education sent an email to Beth Norton at the United Federation of Teachers ("UFT") saying that any request for an exemption from taking the vaccination immediately placed the member's fingerprints into the 'Problem Code' at the Human Resources Office of Personnel Investigations.

46. As such, Ms. Moffatt's fingerprints were placed in a database at the Office of Personnel Investigations.

47. The 'Problem Code' is used for employees who have committed what the New York City Department of Education considers misconduct. Thus, the NYCDOE has considered Ms. Moffat's not getting vaccinated as 'misconduct' which will adversely affect her ability to get a job in the City ever again, and which will likely impact her ability ever to obtain public employment again since her problem code and fingerprints are in databases shared by law enforcement.

48. At the February 8, 2024, hearing, it was represented to the Court by City attorney Susan Paulson that terminated employees would have the opportunity to begin applying for reinstatement of their positions.

  **E. Ms. Moffatt seeks reinstatement.**

49. Thus, in reliance on Attorney Paulson's representation to the Second Circuit Court of Appeals panel, Ms. Moffatt's incentive to sue for discrimination was largely eliminated and she began the process of attempting to be reinstated.

50. On February 9, 2023, Ms. Moffatt attempted to sign into the internal NYCDOE system to request reinstatement but was locked out.

51. Over the following days and weeks, Ms. Moffatt continued attempting to access the system without success.

52. On March 8, 2023, Ms. Moffatt send emails to defendants Stone, Rodi, Vladeck, and Solimando, among others, requesting reinstatement.

53. Upon information and belief, all such individuals had the ability to get Ms. Moffatt into the system and such request by Ms. Moffatt to them was within the scope and purview of their duties with NYCDOE.

54. Despite the same, all such defendants breached their duties to Ms. Moffatt by failing to respond or to take action to get her enrolled in the system for reinstatement.

55. On March 15, 2023, Ms. Moffatt sent a second email request for reinstatement, this time to defendants Banks, Weisberg, and Rosales of the NYCDOE.

56. Upon information and belief, all such individuals had the ability to get Ms. Moffatt into the system and such request by Ms. Moffatt to them was within the scope and purview of their duties with NYCDOE.

57. Despite the same, all such defendants breached their duties to Ms. Moffatt by failing to respond or to take action to get her enrolled in the system for reinstatement.

58. Upon information and belief, Ms. Moffatt and those similarly situated, were unable to obtain any traction with reinstatement because defendant Adams acted to stifle and prevent such reinstatements from occurring.

59. All such acts by Adams and other state actor defendants herein violated Ms. Moffatt's established property interest rights in applying for reinstatement of her position, thus violating her substantive due process rights under the Fourteenth Amendment of the United States Constitution.

60. Adams' motivation, and that of all other defendants herein, in whole or in part, was discriminatory animus against those such as Ms. Moffatt whose religious beliefs and values caused them to be unwilling to accept COVID-19 vaccination.

**F.    CSA fails to perform its function of protecting Ms. Moffatt, as was its obligation.**

61. Also on March 15, 2023, Ms. Moffatt provided notice to CSA that she was seeking reinstatement.

62. More specifically, defendants Rubio, Sinclair, and Grandwetter were informed of Ms. Moffatt's reinstatement efforts and were duty bound by virtue of her having been terminated while a union member to CSA's aid and assistance in being reinstated.

63. However, as with the NYCDOE representatives, Ms. Moffatt's plea to CSA, through its executive officers, did not generate any response in breach of their respective duties to Ms. Moffatt.

### G. Ms. Moffatt's SCI Complaint.

64. On March 21, 2023, Ms. Moffatt mailed a request to Anastasia Coleman Special Commissioner of Investigation ("SCI") of the City of New York School District, whose function is to independently investigate allegations of misconduct in the schools.

65. Ms. Moffatt specifically sought an investigation regarding the Problem Code and fingerprint submission related to all religious exemption requesters.

66. As with all other efforts to seek appropriate attention and remedial action fell on deaf ears, and she never received a response, nor did SCI investigate.

67. Upon information and belief, the reason that a thorough investigation was not conducted is that Mayor Adams purposely, knowingly, recklessly and/or negligently intervened and interfered with such process so that the investigation would not proceed, without limitation, in violation of Ms. Moffatt's due process rights.

### H. Ms. Moffatt serves a Notice of Claim.

68. On May 12, 2023, Ms. Moffatt served a Notice of Claim on the City Comptroller, Corporation Counsel, and the NYCDOE, via priority mail.

69. On May 17, 2023, the City Comptroller kept the original Notice of Claim, but sent back a copy noting that he was refusing to accept the same since it was not sent by registered or certified mail.

70. By keeping the original Notice of Claim, the City Comptroller forced Ms. Moffatt to have the Notice of Claim re-drafted and notarized if she wished to serve the same.

71. On May 22, 2023, Ms. Moffatt properly served the Notice of Claim via registered mail, a true copy of which is attached hereto as **Exhibit A** and is incorporated herein by reference.

72. Since such time, Ms. Moffatt has received no response at all to her Notice of Claim.

73. Upon information and belief, the Notice of Claim has not been investigated.

74. Upon information and belief, the reason that a Notice of Claim investigation and acknowledgement was not provided and/or that an investigation did not take place is that Mayor Adams prevented any and all such investigations related to religious accommodation denials of COVID-19 vaccine requirements based on his discriminatory animus, and in violation of Ms. Moffatt's due process rights under the U.S. Constitution.

## COUNT I
### (New York Human Rights Law §297—State Defendants)

75. Ms. Moffatt repeats and reasserts each and every allegation above as if fully set forth herein at length.

76. At all pertinent times, all defendants Adams, Banks, Stone, Rodi, Vladeck, Solimando, Weisberg, Rosales, and Coleman were state actors (together the "State Defendants").

77. At all pertinent times from and before May 12, 2023, the State Defendants were motivated in their actions or lack thereof, in whole or in part, due to discriminatory animus against those who refused to be vaccinated due to religious creed including, without limitation, Ms. Moffatt.

78. The State Defendants, through counsel, misrepresented that such employees, including Ms. Moffatt, would be entitled to apply for reinstatement of their positions, and then acted to prevent such reinstatement from occurring based in whole or in part on their discriminatory animus related to Ms. Moffatt's religious creed.

79. By virtue of their misrepresentations and discriminatory animus, Ms. Moffatt was caused to forego her potential lawsuit regarding discriminatory termination.

80. As a direct and proximate result of their discriminatory animus as against Ms. Moffatt, in particular, the State Defendants have damaged Ms. Moffatt including, but not limited to, in the manners of economic loss, emotional distress, physical ailment, and loss of enjoyment of life.

81. Further, by their actions the State Defendants have caused Ms. Moffatt to suffer with a debilitating mark on her employment record which designates her as being a "problem" such that her ability to obtain future employment is permanently damaged.

82. The City of New York and the NYCDOE are liable to Ms. Moffatt in *respondeat superior* and/or otherwise for the State Defendants' actions.

WHEREFORE, Ms. Moffatt demands judgment in her favor and against the State Defendants, The City of New York, and the NYCDOE defendants, jointly and severally, as follows:

    A.    Awarding compensatory damages;

    B.    Awarding consequential damages;

    C.    Awarding punitive damages;

    D.    Awarding back pay;

    E.    Awarding reinstatement to her position;

    F.    Compelling the removal of the problem code from Ms. Moffatt's official records;

    G.    Awarding attorneys' fees and costs of suit including, without limitation, expert witness fees;

    H.    Awarding interest as allowed by law;

    I.    Granting such other and further relief as may be equitable and just.

## COUNT II

### (New York Human Rights Law §297--CSA Defendants)

83. Ms. Moffatt repeats and reasserts each and every allegation above as if fully set forth herein at length.

84. At all pertinent times defendants Rubio, Sinclair, and Grandwetter ("CSA Defendants") were motivated in their actions or lack thereof, in whole or in part, due to discriminatory animus against those who refused to be vaccinated due to religious creed including, without limitation, Ms. Moffatt.

85. At all pertinent times, CSA required, encouraged, or passively permitted the CSA Defendants to act with such discriminatory animus and, thus, is liable for their actions and its own policies in *respondeat superior* or otherwise.

86. At all pertinent times, the CSA Defendants and CSA acted in concert with, permitted, or otherwise joined the State Defendants, The City of New York, and/or the NYCDOE in discriminating against employees of NYCDOE whose religious creed caused them to refuse COVID-19 vaccination.

87. As a direct and proximate result of their discriminatory animus as against Ms. Moffatt, in particular, the CSA Defendants and CSA have damaged Ms. Moffatt including, but not limited to, in the manners of economic loss, emotional distress, physical ailment, and loss of enjoyment of life, while also allowing her to suffer permanent damage to her employment prospects as a result of the Problem Code on her record, against which CSA failed to defend Ms. Moffatt.

WHEREFORE, Ms. Moffatt demands judgment in her favor and against the State Defendants, CSA Defendants and the CSA, jointly and severally, as follows:

A. Awarding compensatory damages;

B. Awarding consequential damages;

    C.    Awarding punitive damages;

    D.    Awarding attorneys' fees and costs of suit including, without limitation, expert witness fees;

    E.    Awarding interest as allowed by law;

    F.    Awarding such other and further relief as may be equitable and just.

**COUNT III**
**(42 U.S.C. §1983--First Amendment – Religion).**

88. Ms. Moffatt repeats and reasserts each and every allegation above as if fully set forth herein at length.

89. By their actions as aforesaid, the State Defendants caused Ms. Moffatt to lose her ability to pursue discrimination claims that were ripe based on the Right to Sue letter she received from the EEOC, and otherwise deprived her of due process of law with respect to the Problem Code placed on her official record.

90. Such claims related to, without limitation, religious discrimination, and age discrimination, and stood a substantial chance of success on the merits under all circumstances including, without limitation, that the subject vaccine mandate was based on an Executive Act which was not permitted by law and/or which was not based on a legislative enactment.

91. Ms. Moffatt had a property interest in her job which was protected by the United States Constitution, and the act of causing her not to pursue such claims based on trickery and deceit as actions taken in furtherance of their discriminatory animus deprived Ms. Moffatt of her civil right, privileges and immunities as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

92. As a direct and proximate result of their frauds, Ms. Moffatt has been damaged including, but not limited to, in the manners of economic loss, emotional distress, physical ailment, loss of enjoyment of life, and permanent negative information being placed on her official records.

WHEREFORE, Ms. Moffatt demands judgment in her favor and against the State Defendants, The City of New York, and the NYCDOE defendants, jointly and severally, as follows:

    A.    Awarding compensatory damages;

    B.    Awarding consequential damages;

    C.    Awarding punitive damages;

    D.    Awarding back pay;

    E.    Awarding reinstatement to her position;

    F.    Compelling the removal of the problem code from Ms. Moffatt's official records;

    G.    Awarding attorneys' fees and costs of suit including, without limitation, expert witness fees;

    H.    Awarding interest as allowed by law;

    I.    Granting such other and further relief as may be equitable and just.

## COUNT IV
**(Fraud--State Defendants)**

93. Ms. Moffatt repeats and reasserts each and every allegation above as if fully set forth herein at length.

94. The City of New York, through its legal counsel, made representations to the Second Circuit Court of Appeals that those similarly situated as Ms. Moffatt, including Ms. Moffat, would be able to apply for reinstatement of their positions.

95. The City of New York, through its legal counsel, made such representation with the knowledge and intent that it was false, and with the intent to cause the Court and those affected thereby, including Ms. Moffatt, to reasonably rely thereon.

96. Such false statements caused Ms. Moffatt's reasonable reliance.

97. The State Defendants have acted to carry out such frauds.

98. As a direct and proximate result of their frauds, Ms. Moffatt has been damaged including, but not limited to, in the manners of economic loss, emotional distress, physical ailment, loss of enjoyment of life, and permanent negative information being placed on her official records.

WHEREFORE, Ms. Moffatt demands judgment in her favor and against the State Defendants, The City of New York, and the NYCDOE defendants, jointly and severally, as follows:

A. Awarding compensatory damages;

B. Awarding consequential damages;

C. Awarding punitive damages;

D. Compelling the removal of the problem code from Ms. Moffatt's official records;

E. Awarding attorneys' fees and costs of suit including, without limitation, expert witness fees;

F. Awarding interest as allowed by law;

G. Granting such other and further relief as may be equitable and just.

## COUNT V
### (Negligence--All Defendants)

99. Ms. Moffatt repeats and reasserts each and every allegation above as if fully set forth herein at length.

16

100. Defendants all owed Ms. Moffatt duties of care, without limitation, to ensure her ability to bring legal claims, protect her interests, protect her job and legal rights, and to take actions typically required to investigate claims and complaint, and to prosecute actions related thereto.

101. It was reasonably foreseeable that Ms. Moffatt, a reasonably prudent person, would be harmed by defendants' breaches as aforesaid.

102. As a direct and proximate result of their frauds, Ms. Moffatt has been damaged including, but not limited to, in the manners of economic loss, emotional distress, physical ailment, loss of enjoyment of life, and permanent negative information being placed on her official records.

WHEREFORE, Ms. Moffatt demands judgment in her favor and against all defendants, jointly and severally, as follows:

 A. Awarding compensatory damages;

 B. Awarding consequential damages;

 C. Awarding attorneys' fees and costs of suit including, without limitation, expert witness fees;

 D. Awarding interest as allowed by law;

 E. Granting such other and further relief as may be equitable and just.

## COUNT VI
**(Intentional Infliction of Emotional Distress--All Defendants)**

103. Ms. Moffatt repeats and reasserts each and every allegation above as if fully set forth herein at length.

104. Defendants' actions constituted extreme and outrageous conduct and were purposely undertaken with the intent and/or with reckless disregard of the likelihood that they would cause Ms. Moffatt severe emotional distress trauma.

105. As a direct and proximate result thereof, Ms. Moffatt did, in fact, experience severe emotional distress which is intolerable in a civilized society, thus causing damages including, but not limited to, in the manners of economic loss, emotional distress, physical ailment, loss of enjoyment of life, and permanent negative information being placed on her official records.

WHEREFORE, Ms. Moffatt demands judgment in her favor and against all defendants, defendants, jointly and severally, as follows:

    A.    Awarding compensatory damages;

    B.    Awarding consequential damages;

    C.    Awarding punitive damages;

    D.    Compelling the removal of the problem code from Ms. Moffatt's official records;

    E.    Awarding attorneys' fees and costs of suit including, without limitation, expert witness fees;

    F.    Awarding interest as allowed by law;

    G.    Granting such other and further relief as may be equitable and just.

## COUNT VII
### (Aiding and Abetting--All Defendants)

106. Ms. Moffatt repeats and reasserts each and every allegation above as if fully set forth herein at length.

107. By their actions aforesaid, all defendants, or some of them, conspired to violate, aid, and abet the torts committed against Ms. Moffatt, with knowledge and/or reckless disregard of the consequences.

108. As a direct and proximate result of their frauds, Ms. Moffatt has been damaged including, but not limited to, in the manners of economic loss, emotional distress, physical ailment, loss of enjoyment of life, and permanent negative information being placed on her official records.

WHEREFORE, Ms. Moffatt demands judgment in her favor and against all defendants, defendants, jointly and severally, as follows:

    A.    Awarding compensatory damages;

    B.    Awarding consequential damages;

    C.    Awarding punitive damages;

    D.    Compelling the removal of the problem code from Ms. Moffatt's official records;

    E.    Awarding attorneys' fees and costs of suit including, without limitation, expert witness fees;

    F.    Awarding interest as allowed by law;

    G.    Granting such other and further relief as may be equitable and just.

## COUNT VIII
**(Conspiracy--All Defendants)**

109.    Ms. Moffatt repeats and reasserts each and every allegation above as if fully set forth herein at length.

110.    By their actions aforesaid, all defendants, or some of them, conspired to violate, and commit torts against Ms. Moffatt, with knowledge and/or reckless disregard of the consequences.

111.    As a direct a proximate result of their frauds, Ms. Moffatt has been damaged including, but not limited to, in the manners of economic loss, emotional distress, physical ailment, loss of enjoyment of life, and permanent negative information being placed on her official records.

WHEREFORE, Ms. Moffatt demands judgment in her favor and against all defendants, defendants, jointly and severally, as follows:

    A.    Awarding compensatory damages;

    B.    Awarding consequential damages;

C. Awarding punitive damages;

D. Compelling the removal of the problem code from Ms. Moffatt's official records;

E. Awarding attorneys' fees and costs of suit including, without limitation, expert witness fees;

F. Awarding interest as allowed by law;

G. Granting such other and further relief as may be equitable and just.

## JURY DEMAND

Trial by jury is demanded on all Counts so triable.

Dated: New York, New York
March 29, 2024

          MURRAY-NOLAN BERUTTI LLC
          Attorneys for Plaintiffs

*s/ Ronald A. Berutti*
By:_____
          Ronald A. Berutti
          30 Wall Street, 8th Floor
          New York, New York 10005
          212-575-8500