UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------X
HELENE MOFFATT,

Plaintiff,

-against-

ERIC ADAMS, in his official capacity as Mayor of the City of New York; THE CITY OF NEW YORK, DAVID BANKS, individually and in his official capacity as Chancellor of the New York City Public Schools; and NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants.
-----------------------------------------------X

ORDER
24-CV-2348 (JS) (ST)

APPEARANCES

For Plaintiff
Helene Moffatt: Ronald A. Berutti, Esq.
Murray-Nolan Berutti LLC
30 Wall Street, 8th Floor
New York, New York 10005

For Defendants: Steven Banks, Esq.
Phoebe Huth, Esq.
Corporation Counsel of the City of New York
100 Church Street, Room 2-118
New York, New York 10007

SEYBERT, District Judge:

Plaintiff Helene Moffatt ("Plaintiff") brings this action (the "Action") following the termination of her employment with the New York City Department of Education (the "DOE") for failure to comply with the DOE's since-rescinded COVID-19 vaccination mandate (the "Mandate"). (See SAC, ECF No. 48.)

Pending before the Court is a Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") filed by Defendants DOE, Mayor Eric Adams ("Mayor Adams"), the City of New York (the "City"), and New York City Schools Chancellor David Banks ("Banks"; collectively with the DOE, Mayor Adams, and the City, "Defendants"). (See Motion, ECF No. 54; Support Memo, ECF No. 54-1; Reply, ECF No. 56.) Plaintiff opposes the Motion. (See Opp'n, ECF No. 55.) For the reasons discussed below, Defendants' Motion is GRANTED in its entirety.

## BACKGROUND

### I. Factual Background

#### A. Regarding Plaintiff, Generally

Plaintiff was employed by the DOE in various capacities beginning in 1990, when she was hired as a schoolteacher, through the time of her termination in 2022. (SAC ¶¶ 9-12.) A Catholic, Plaintiff alleges she does not take "vaccines which use human abortive tissue at any process of its creation." (Id. ¶ 25.) At the time of her termination, Plaintiff worked as a Crisis Director Administrator based in Brooklyn; she worked remotely during the COIVD-19 pandemic. (Id. ¶¶ 8, 15.) Although she does not identify her exact age or compensation level, Plaintiff characterizes herself as "an older, tenured employee" who was "highly paid in relation to others." (Id. ¶ 12.)

B. **DOE Vaccine Mandate & Exemption Request**

In 2021, the DOE initiated the Mandate. (Id. ¶ 13.) Facially, the Mandate allowed for religious exemptions, although Plaintiff alleges "certain specific religious groups, such as 'Christian Scientists,'" were not required to substantiate their beliefs, while other exemption seekers were required to establish the basis for their beliefs. (Id. ¶ 14.) Plaintiff applied for a religious exemption from the Mandate, which was denied, prompting Plaintiff to appeal via an internal arbitration process.[1] (Id. ¶¶ 15, 18.)

On October 14, 2021, an arbitration was held to address Plaintiff's appeal. (Id. ¶ 18.) Plaintiff alleges at the arbitration, she was asked several questions concerning the nature of her religious beliefs against certain vaccinations. (Id.) On October 15, 2021, her appeal was denied, and she was placed on leave without pay. (Id. ¶ 19.) On November 19, 2021, Plaintiff filed a second appeal with the New York City Department of Human Capital, after which she received and responded to a list of questions about her religious beliefs. (Id. ¶¶ 20-23.) On March

[1] The SAC does not specify when Plaintiff applied for an exemption. Additionally, although Plaintiff does not explicitly allege she requested an accommodation to work remotely, she does state she "was capable of having her religious beliefs accommodated without undue hardship to defendants, as demonstrated by the fact that she had worked remotely during [the] height of the pandemic without reduction in her services." (SAC ¶ 15.)

28, 2022, her appeal was denied on the ground she had failed to establish a sincerely held religious belief entitling her to an accommodation. (Id. ¶ 24.) On April 7, 2022, Plaintiff was terminated for failing to comply with the Mandate. (Id. ¶ 26.)

On June 28, 2022, following the denial, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), claiming religious discrimination "and/or other discrimination". (Id. ¶ 29.) On December 6, 2022, the EEOC issued Plaintiff a Right to Sue letter. (Id. ¶ 30.)

### C. **Plaintiff's Attempts to Seek Reinstatement & the "Problem Code"**

On February 6, 2023, Mayor Adams ended the Mandate. (Id. ¶ 32.) Plaintiff alleges, in a February 8, 2023 Second Circuit hearing held in a Mandate-related lawsuit, attorneys made two key representations.[2] First, attorney John Bursch[3] "made it known that on about February 9, 2022, the [DOE] sent an email to" a representative from the United Federation of Teachers stating that "any request for an exemption from taking the vaccination immediately placed the member's fingerprints into the 'Problem

---

[2] Plaintiff alleges the Second Circuit case involved "an appeal by teachers," but does not identify the specific case. (See SAC ¶ 33.) She does not allege she was a party in the case.

[3] The SAC does not specify whom John Bursch represented. (See SAC ¶ 33).

Code' at the Human Resources Office of Personnel Investigations." (Id. ¶ 33.) Per Plaintiff, this "problem code" is used to designate employees who have committed misconduct. (Id. ¶ 35.) Second, City attorney Susan Paulson represented "that terminated employees would have the opportunity to begin applying for reinstatement of their positions" (the "City Representation").[4] (Id. ¶ 36.)

Plaintiff alleges, on February 9, 2023, in reliance on the City Representation, she attempted to apply for reinstatement but was locked out of the application system. (Id. ¶ 39.) In the following weeks, Plaintiff continued to unsuccessfully attempt to access the application system. (Id. ¶ 40.) Plaintiff claims, on March 8, 2023, she emailed several DOE employees requesting reinstatement. (Id. ¶ 41.) On March 15, 2023, after receiving no response to her previous emails, Plaintiff emailed Banks directly. (Id. ¶¶ 44-45.) Banks also did not respond. (Id.) Upon "information and belief," Plaintiff contends she was "unable to obtain any traction with reinstatement because defendant Adams acted to stifle and prevent such reinstatements from occurring." (Id. ¶ 46.)

[4] Although the SAC alleges this comment was made on February 8, 2024, this appears to be a typographical error, as the comment appears in the discussion of the 2023 hearing. (SAC ¶ 36.)

On May 12, 2023, Plaintiff first attempted to serve her Notice of Claim on the New York City Comptroller and DOE through priority mail, an improper method under New York law.[5] (Id. ¶¶ 51-53.) On May 22, 2023, Plaintiff properly served her Notice of Claim via registered mail, an approved method of service. (Id. ¶ 54; see also Notice of Claim, ECF No. 1-1, attached to Compl., ECF No. 1.) The Notice of Claim generally describes, inter alia, the circumstances of her exemption request denial, her termination, and the 2023 Second Circuit hearing's "problem code" revelation. (See generally Notice of Claim.)

Plaintiff alleges, in September 2024, she was finally able to access the portal, "and attempted to receive consideration for several substitute teaching positions." (Id. ¶ 47.) However, she claims she "was not considered for such jobs due to her being the subject of a Problem Code." (Id. ¶¶ 47-48.)

---

[5] The SAC alleges, on May 17, 2023, "the City Comptroller kept the original Notice of Claim but sent back a copy noting that he was refusing to accept the same since it was not sent by registered or certified mail." (SAC ¶ 52); see also see also N.Y. Gen. Mun. Law § 50-e(3)(a) (requiring service by "registered or certified mail").

## II. **The Complaint, Motion, and Opposition**

### A. **SAC**

On March 29, 2024, Plaintiff filed her initial complaint. (See Compl.) On October 24, 2025, Plaintiff filed the operative SAC. (See SAC.) The SAC broadly alleges the Mandate, Plaintiff's termination, and the purported obstruction Plaintiff faced during the reinstatement process amounted to religious discrimination under New York Human Rights Law § 297 and the First and Fourteenth Amendments to the U.S. Constitution (respectively, the "NYSHRL Religious Discrimination Claim", "First Amendment Claim", and "Equal Protection Claim"; collectively, the "Religious Discrimination Claims").[6] (Id. ¶¶ 58-68, 74-80.) Plaintiff also asserts age discrimination claims under the NYSHRL and the Age Discrimination in Employment Act (the "ADEA") (collectively, the "Age Discrimination Claims"), on grounds Defendants used the Mandate as a pretext to terminate Plaintiff because of her age and compensation level. (Id. ¶¶ 61, 69-73.) The SAC also maintains Defendants' conduct amounts to negligence and intentional

[6] Although Plaintiff's Fourteenth Amendment claim is based upon the Equal Protection Clause, at various points, the SAC asserts Plaintiff's "property interests in her job and in her fingerprints and personal data" are protected by the substantive due process doctrine. (Id. ¶¶ 75-76.) Plaintiff does not, however, assert a separate substantive due process cause of action.

infliction of emotional distress under New York law (respectively, the "Negligence Claim" and the "IIED Claim"). (Id. ¶¶ 81-87.)

B. **Motion & Opposition**

On February 24, 2026, Defendants served the Motion and Support Memo, raising several arguments in favor of dismissal. (See Motion; Support Memo.) First, Defendants contend all claims against the City and Banks should be dismissed because (1) as a separate entity, the City cannot be held liable for DOE actions, and (2) the SAC fails to adequately state Banks's personal involvement. (Support Memo at 9-10.) Second, Defendants argue the NYSHRL Religious Discrimination, Negligence, and IIED Claims (collectively, the "State Law Claims") are barred because (3) Plaintiff failed to timely file a sufficient Notice of Claim within three months of accrual, as required by Education Law § 3813(1), and (4) those claims are independently time-barred under a one-year statute of limitations. (Id. at 10-13.) Third, Defendants maintain the Religious Discrimination Claims fail because, in addition to the Mandate having been upheld by the Second Circuit, Plaintiff does not adequately allege discriminatory animus or identify other similarly-situated individuals who were treated more favorably than was she. (Id. at 14-18.) Fourth, the Age Discrimination Claims fail, in Defendants' view, because Plaintiff never identifies her age and did not plead facts connecting any adverse

action to age-based animus. (Id. at 18-19.) Lastly, Defendants argue neither the Negligence nor IIED Claims can be maintained because, as to the Negligence Claim, Plaintiff does not plead facts establishing a municipal "special duty", and, as to the IIED Claim, she does not plead facts of "extreme and outrageous conduct" needed to sustain that cause of action. (Id. at 22-23.)

On March 24, 2026, Plaintiff served her Opposition. (See Opp'n.) Plaintiff maintains the City and Banks are proper Defendants because the City's attorney made the City Representation and because Mayor Adams oversaw the end of the Mandate, which impacted her reinstatement process, and because Banks denied her accommodation requests and "obstructed" her reinstatement out of improper animus. (Id. at 6-9.) Plaintiff further contends her Notice of Claim was substantively sufficient and her claims are timely, because the underlying conduct was part of a continuing violation beginning in October 2021. (Id. at 8-13.) As to the merits, Plaintiff argues her Religious Discrimination Claims adequately detail religious animus and that she, as a Catholic, was treated less favorably than members of other religious groups. (Id. at 11-21.) Plaintiff also argues her Age Discrimination Claims are properly pleaded based upon her status as an older, highly compensated employee. (Id. at 21-23.) Finally, Plaintiff argues her Negligence Claim is adequately

pleaded because Defendants assumed a special duty through the City Representation, and her IIED Claim is appropriate because Defendants' conduct was sufficiently "extreme and outrageous" for IIED purposes. (Id. at 23-25.) Plaintiff also contends the State Law and Age Discrimination Claims are subject to equitable tolling because of the City Representation. (Id. at 11, 21.)

On May 5, 2026, Defendants filed a Reply. (See Reply.)

## DISCUSSION

### I. Applicable Law

A claim is properly dismissed pursuant to Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In determining whether to grant a Rule 12(b)(6) motion, courts must "accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." Glob. Network Commc'ns,Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Basile v. Levittown United Tchrs., 17 F. Supp. 3d 195, 200 (E.D.N.Y. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do[.]" Twombly, 550 U.S. at 555 (internal citations omitted).

## II. **Application**

### A. **Whether the City and Banks are Proper Defendants**

Courts have consistently held "[t]he City and the DOE are separate legal entities, and the City cannot be held liable for the alleged torts of DOE employees." Sotomayor v. City of N.Y., 862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012) (citing Perez v. City of N.Y., 41 A.D.3d 378, 837 N.Y.S.2d 571, 572 (1st Dep't 2007), aff'd, 713 F.3d 163 (2d Cir. 2013)). Plaintiff cites no authority to the contrary, nor any authority supporting the proposition that either the City Representation or Mayor Adams's alleged actions may bridge the legal separation between the City and DOE. (See Opp'n at 6.) Accordingly, Defendants' Motion on this point is GRANTED.

As for Banks, the SAC's only claims directed specifically at him are (1) entirely conclusory allegations concerning his purported animus toward Plaintiff's religious beliefs, and (2) an allegation that he failed to respond to an email. (See SAC ¶¶ 26, 43, 45, 50, 59-60, 66.) These threadbare allegations of animus, unaccompanied by any well-pleaded facts to support them, are exactly the kind of conclusory assertions the

Court is not required to accept as true in the face of a Rule 12(b) dismissal motion, as they rest entirely on assumptions. (Compare id.), with Iqbal, 556 U.S. at 678 ("mere conclusory statements [ ] do not suffice" under Rule 12(b)(6)). Accordingly, the Motion is GRANTED on this point as well.

### B. **Whether the State Law Claims are Timely**

#### 1. **Whether the Notice of Claim Was Timely Filed or Substantively Sufficient**

Under New York law, any party seeking to assert a claim against a school district or an officer of a school district must serve a "Notice of Claim" on the district or officer "within three months after the accrual of such claim" before commencing an action in court. N.Y. Educ. Law § 3813(1). The notice of claim must state "'the nature of the claim' and 'the time when, the place where and the manner in which the claim arose.'" Berkowitz v. E. Ramapo Cent. Sch. Dist., 932 F. Supp. 2d 513, 527 (S.D.N.Y. 2013) (quoting Marino v. Chester Union Free Sch. Dist., 859 F. Supp. 2d 566, 570 (S.D.N.Y. 2012)). "Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." Dingle v. City of N.Y., 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010).

On May 22, 2023, Plaintiff properly served her Notice of

Claim.[7] (SAC ¶ 54; Notice of Claim.) The Notice of Claim is substantively appropriate, as it references many of the same general facts asserted in the SAC, including Plaintiff's termination, the "Problem Code" and her difficulties with the reinstatement platform. (See Notice of Claim at 5-7); see also A.W. by E.W. v. N.Y. Dep't of Educ., 519 F. Supp. 3d 128, 135 (E.D.N.Y. 2021) (notice of claim must "includ[e] information sufficient to enable the municipal defendant to investigate the claim").[8] Accordingly, the Notice of Claim is not a bar to any State Law Claim that accrued on or after February 21, 2023, because those claims accrued within three months of the May 22, 2023 service date.[9] Claims that accrued before February 21, 2023, and

[7] Because Plaintiff's attempted service via priority mail (see SAC ¶¶ 52-53) did not comply with state law, the correct date of service is May 22, 2023, rather than the initial attempted service date of May 12, 2023. See Zubko-Valva v. County of Suffolk, 607 F. Supp. 3d 301, 320 (E.D.N.Y. 2022) (plaintiff's decision to send the notice via priority mail "render[s] her service inadequate").

[8] Despite the Notice of Claim's numerous references to the "Problem Code", Defendants argue "Plaintiff's Notice of Claim is devoid of any mention of a Problem Code." (Reply at 8 (citing Defs.' Excerpt of Notice of Claim, ECF No. 54-6, attached to Huth Decl., ECF No. 54-3).) Defendants' Excerpt of the Notice of Claim, which includes only its first two pages, does not mention the Problem Code, although subsequent pages Plaintiff exhibited do mention the Problem Code. (Compare Defs.' Excerpt of Notice of Claim, with Notice of Claim.) While the Court declines to speculate as to Defendants' motives, attorneys must accurately portray their exhibits and avoid presenting excerpts in a manner that omits important context.

[9] Plaintiff asserts she "filed her Notice of Claim on May 12, 2023 -- well within three months of discovering the Problem Code

which are subject to the Notice of Claim requirement, however, are barred because they fall outside of the three-month period.[10] Accordingly, Defendants' Motion is GRANTED in part and DENIED in part, as to their Notice of Claim argument.[11]

### 2. **Whether the State Law Claims are Time Barred**

Defendants contend any State Law Claim that accrued before March 29, 2023 is time-barred, as New York Education Law § 3813(2-b) imposes a one-year statute of limitations, and Plaintiff filed her initial Complaint on March 29, 2024. (Motion at 12 (citing N.Y. Educ. Law § 3813(2-b) ("no action or special proceeding shall be commenced against [a school district or an officer of a school district] more than one year after the cause of action arose").) In Opposition, Plaintiff contends the State Law Claims (a) are part of a "continuing violation" dating back to the October 2021 denial of her accommodation, (b) were partially tolled during the period between the filing of her EEOC charge on

(February 8, 2023) and being denied portal access (February-March 2023)." (Opp'n at 8-9.) This is incorrect as to February 8, 2023. This date is not "well within three months" of the first attempt at service on May 12; it outside this period altogether. Thus, the Court is perplexed by this representation.

[10] In Opposition, Plaintiff also requests this Court grant leave to file a timely notice of claim nunc pro tunc if Plaintiff's Notice of Claim is deemed untimely. (Opp'n at 9-10.) However, it is well established that "[f]ederal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement." Dingle v. City of N.Y., 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010).

[11] As further explained infra, to the extent Plaintiff's claims are not subject to dismissal because of the Notice of Claim, they are independently subject to dismissal on other grounds.

June 28, 2022, and her receipt of a right-to-sue letter on December 6, 2022, and (c) are subject to equitable tolling. (Opp'n at 10-11.) Because Plaintiff did not file the Complaint until March 29, 2024, and because the Court does not find Plaintiff's continuing-violation or tolling arguments compelling, the Court GRANTS Defendants' Motion to the extent all State Law Claims that accrued before March 29, 2023, are time barred. The Court addresses each of Plaintiff's unavailing arguments below.

**a. The Continuing Violations Doctrine**

Plaintiff asserts Defendants engaged in a continuing violation of her rights via the (1) October 2021 accommodation denial, (2) April 2022 termination, (3) placement of the "Problem Code" in her record, which she discovered in February 2023, (4) obstruction of the application portal from February to March 2023, and (5) prevention of her obtaining employment in September 2024. (Opp'n at 11.) Defendants contend the continuing-violation doctrine is strongly disfavored in the Second Circuit and does not apply because the events Plaintiff identifies are distinct in nature. (Reply at 4-5.) The Court agrees with Defendants.

As Defendants correctly observe, "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling

circumstances." Bright v. Coca Cola Refreshements USA, Inc.[12], No. 12-CV-234, 2014 WL 5587349, at *4 (E.D.N.Y. Nov. 3, 2014), aff'd sub nom. Bright v. Coca-Cola Refreshments USA, Inc., 639 F. App'x 6 (2d Cir. 2015) (quoting Trinidad v. N.Y.C. Dep't of Correction, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)). Discrete acts, such as "termination, failure to promote, denial of transfer, or refusal to hire," are "separate[ly] actionable," even where they are related to timely discriminatory acts. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). "The inquiry into whether timely and untimely acts are sufficiently related to invoke the continuing violation doctrine is flexible and fact-specific . . . . [I]ncidents that involve different perpetrators, actions, or targets, or are temporally distant from one another, may be insufficiently related." Bright, 2014 WL 5587349, at *4.

Defendants' alleged actions—the refusal to accommodate, termination, "Problem Code" placement, application obstruction, and refusal to hire—are analogous to the types of acts the Supreme Court has identified as "separate[ly] actionable." See Morgan, 536 U.S. at 114 ("failure to promote, denial of transfer, or refusal to hire" are "separate[ly] actionable"). These purportedly "continuing" acts occurred over several years, and the SAC contains no well-pleaded facts establishing a common animus or

[12] The misspelling of "Refreshements" was contained in the original case caption.

improper motive linking them for continuing violation purposes. Additionally, it is not clear what actions, if any, Plaintiff took to apply for reinstatement from April 2023 through August 2024, as the SAC is silent about this time period. In the absence of the requisite compelling circumstances, the Court declines to apply the continuing-violation doctrine to rescue Plaintiff's untimely claims.

**b. EEOC Tolling**

Because Plaintiff did not file her Notice of Claim until May 22, 2023, the Court does not have jurisdiction to address Plaintiff's State Law Claims accruing before February 21, 2023. See Dingle, 728 F. Supp. 2d at 348-49. Accordingly, whether Plaintiff's claims were tolled from June through December 2022 is irrelevant, as that period predates her timely claims altogether.

**c. Equitable Tolling**

"[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (further citation and quotations omitted). In considering whether equitable tolling applies, courts must determine "whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances

are so extraordinary that the doctrine should apply." Id. at 80-81 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)). Courts have found circumstances "extraordinary" enough to warrant equitable tolling in cases involving, inter alia, egregious attorney negligence, plaintiff hospitalization, and the willful concealment of assets. See Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003) ("extraordinary" circumstances existed where, "[i]n spite of being specifically directed by his client's representatives to file a '2255,' [the attorney] failed to file such a petition at all"); Barney v. H.E.L.P. Homeless Serv. Corp., No. 19-CV-5959, 2020 WL 1699984, at *4 (S.D.N.Y. Apr. 8, 2020) ("[t]here can be no question that suffering a stabbing attack that resulted in ten days' hospitalization is a 'rare and exceptional circumstance' that warrants equitable tolling"); Bodner v. Banque Paribas, 114 F. Supp. 2d 117, 135 (E.D.N.Y. 2000) (applying equitable tolling where defendants allegedly engaged in the "deceptive and unscrupulous deprivation" of Holocaust survivors' assets and information substantiating their rights to those assets, in an action involving alleged Nazi-looted art).

In opposition, Plaintiff merely asserts equitable tolling should apply because she relied upon the City Representation, "which induced her to forgo filing suit within the limitations period." (Opp'n at 11 (citing SAC ¶ 38).) She cites

no authority indicating a representation made in a separate legal proceeding constitutes an "extraordinary" circumstance for purposes of equitable tolling. Such a finding would be a far cry from circumstances where, for example, an attorney willfully disobeyed a client's time-sensitive filing instructions. See Baldayaque, 338 F.3d at 152. Moreover, if Plaintiff believed she had been induced to forgo filing suit within the limitations period, it is unclear why she was not similarly induced to refrain from serving her May 2023 Notice of Claim. In any event, the Court finds the extraordinary remedy of equitable tolling is not warranted in this instance.

### C. **Religious Discrimination**

#### 1. **NYSHRL Religious Discrimination Claim**

As a preliminary matter, the Court reiterates that Plaintiff may assert the NYSHRL Religious Discrimination Claim only to the extent it accrued after March 29, 2023. (See supra at 14-19.) With that constraint, Plaintiff's only allegations of religious discrimination in the SAC concern her September 2024 attempts "to receive consideration for several substitute teaching positions." (SAC ¶ 47.)

To state a claim under the NYSHRL, Plaintiff must allege "[s]he has been treated less well at least in part because of a protected trait." Bright-Asante v. Saks & Company, Inc., 242 F.

Supp. 3d 229, 242 (S.D.N.Y. 2017) (emphasis in original) (quoting Bell v. McRoberts Protective Agency, Inc., No. 15-CV-0963, 2016 WL 7192083, at *5 (S.D.N.Y. Dec. 12, 2016)); see also Baluch v. 300 W. 22 Realty, LLC, No. 21-CV-9747, 2023 WL 112547, at *5 (S.D.N.Y. Jan. 5, 2023) (stating NYSHRL amended in 2019 "to render the standard for claims [under the NYSHRL to be] closer to the standard under the NYCHRL") (quoting Wellner v. Montefiore Med. Ctr., No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019)). To establish disparate treatment under the NYSHRL, Plaintiff must show she was "treated 'less well' [ . . . ] because of a discriminatory intent." Lee v. Riverbay Corp., 751 F. Supp. 3d 259, 275 (S.D.N.Y. 2024) (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)).

The SAC's allegations of anti-Catholic animus are wholly conclusory. Plaintiff repeatedly uses phrases such as "open hostility to Catholics", "hostile towards traditional Catholics", and "discriminatory animus" without further alleging well-pleaded facts supporting those assertions. (See SAC ¶¶ 16, 21, 34, 43, 50, 57, 60, 62-65.) For example, the SAC does not identify any similarly situated employees or job applicants who were treated more favorably than Plaintiff; nor does it allege any specific conduct by any Defendant demonstrating hostility toward Plaintiff's religious beliefs. Without well-pleaded facts

indicating discriminatory intent, supported by factual allegations showing the allegations are plausible, Plaintiff's disparate-treatment claim under the NYSHRL cannot survive. See Lee, 751 F. Supp. 3d at 275 (discriminatory intent is essential element of NYSHRL religious discrimination claim).

Plaintiff's contention that she "attempted to receive consideration for several substitute teaching positions but was not considered for such jobs due to her being the subject of a Problem Code" are conclusory and unclear. (SAC ¶ 47.) For example, given her bald allegations, it is not apparent whether Plaintiff's "attempt" included a formal job application or whether any potential application was rejected. This lack of explanation is further exemplified by Plaintiff's similarly vague allegation that "principals [ . . . ] have refused even to consider [Plaintiff], upon information and belief, because of a Problem Code," which also does not indicate whether Plaintiff applied for any job. (Id. ¶ 48.) In the absence of well-pleaded supporting factual allegations of discriminatory intent, such uncertain, vague allegations cannot form the basis of a NYSHRL discrimination claim. Accordingly, Defendants' Motion is GRANTED as to the NYSHRL Religious Discrimination Claim.

2. **First Amendment Claim**

Plaintiff raises several First Amendment challenges, including (a) facial and as-applied challenges to the Mandate, as

well as as-applied challenges to Defendants' actions during Plaintiff's attempts to obtain reinstatement; (b) the unreasonable denial of an accommodation; (c) obstructing the application portal; and (d) an assertion that Defendants induced her to forgo her right to sue through the City Representation. (SAC ¶¶ 64-68.) Defendants argue these claims are not viable under the First Amendment. (Support Memo at 15-17.) Because the Court agrees with Defendants, their Motion is GRANTED as to these claims.

The Second Circuit has repeatedly upheld the Mandate as facially constitutional, and the Court is bound by that determination. See New Yorkers for Religious Liberty, Inc. v. City of N.Y., 125 F.4th 319, 324 (2d Cir. 2025), cert. denied sub nom. Kane v. City of N.Y., New York, 146 S. Ct. 993 (2025).

Plaintiff's as-applied arguments also fail. Although the Second Circuit has held the First Amendment does not require religious exemptions to vaccine mandates, "if a government entity chooses to offer exemptions to vaccine mandates, it must do so in a non-discriminatory way." Chinchilla v. N.Y.C. Police Dep't, No. 23-CV-8986, 2024 WL 3400526, at *3 (S.D.N.Y. July 12, 2024) (citing Phillips v. City of N.Y., 775 F.3d 538, 543 (2d Cir. 2015); We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 287-88 (2d Cir. 2021)). As discussed above with respect to the NYSHRL Religious Discrimination Claim, Plaintiff has not provided the Court with

any well-pleaded facts which plausibly allege the Mandate's application to Plaintiff, or Defendants' subsequent actions, were motivated by discriminatory animus based upon religion. Other than nonspecific references to "Christian Scientists", who were purportedly not subjected to such actions, Plaintiff identifies no employee who was treated more favorably than she was under similar circumstances.

Nor does Plaintiff sufficiently allege Defendants subjected her to hostility because of her constitutionally protected beliefs. Carbone v. City of New York, by contrast, provides a useful point of comparison because, in that case as opposed to the instant one, the plaintiff pleaded specific adverse actions tied to his religious objections to the COVID-19 vaccine. No. 25-CV-2368, 2025 WL 3206658, at *1 (S.D.N.Y. Nov. 17, 2025). More specifically, in Carbone, the plaintiff alleged that, during a preliminary examination of his religious objection, a government examiner "disregarded and questioned" his opposition to using medications "developed and/or tested using fetal cells that the worker is concerned may have been the result of an abortion." Id. at *1-2 (further citation omitted). In an alleged attempt to ridicule Carbone, the examiner asked him whether he took Tylenol, which the Court found could support an inference of governmental hostility toward Carbone's religious beliefs. Id. at *4. According to Carbone, the defendants also engaged in improper

weighing of "the value of his religious objection against other considerations, rather than merely testing the sincerity of his religious conviction," as defendants allegedly determined Carbone's "'objections [were] based upon personal views and false facts,' which 'overwhelmingly outweigh the religious beliefs stated during the cooperative dialogue.'" Id. at *4-5.

Unlike plaintiff Carbone, who identified specific conduct, ridiculing comments, disregard of his explanations, and improper weighing of his religious beliefs against secular considerations, here, Plaintiff alleges in general terms only that she was subjected to a "demeaning process", "scrutiny", and "intrusive questions" concerning her religious beliefs. (See SAC ¶¶ 14, 18, 22.) Moreover, Plaintiff fails to identify any statement or action by Defendants demonstrating hostility toward her religious beliefs, relying instead on conclusory assertions that Defendants' actions were "hostile" to Catholics and that Defendants acted with "discriminatory animus." (Id. ¶¶ 16, 21, 34, 43, 50, 57, 60, 62-65.) Accordingly, because Plaintiff has not stated a plausible facial or as-applied First Amendment claim, Defendants' Motion is GRANTED as to the First Amendment Claim.

3. **Equal Protection Claim**

"When a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to

rational-basis review." Kane v. De Blasio, 19 F.4th 152, 166 (2d Cir. 2021) (quoting Does 1-6 v. Mills, 16 F.4th 20, 35 (1st Cir. 2021)). As discussed in the analyses of the NYSHRL Religious Discrimination and First Amendment Claims, Plaintiff has not alleged any well-pleaded facts indicating she was treated less well than another similarly-situated employee because of a protected characteristic. Rather, she merely references "Christian Scientists" and "others receiv[ing] exemptions without scrutiny," without providing any specific factual allegations concerning those individuals or their circumstances. (Opp'n at 20 (citing SAC ¶ 14).) Accordingly, based upon rational-basis review, and finding an absence of factual allegations supporting a plausible Equal Protection Claim, Defendants' Motion as to Plaintiff's Equal Protection Claim is GRANTED.[13]

D. **Age Discrimination Claims**

"'[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010). "Unlike Title VII, the ADEA does not

---

[13] To the extent Plaintiff asserts a substantive due process cause of action, which is only sporadically referenced in the SAC (see SAC ¶¶ 49, 75-76), Defendants' Motion to Dismiss is GRANTED.

require an aggrieved party to receive a right-to-sue letter from the EEOC before filing suit in federal court," but "in the event that the EEOC issues a right-to-sue letter to an ADEA claimant, the claimant must file her federal suit within 90 days after receipt of the letter." Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 563 (2d Cir. 2006), aff'd, 552 U.S. 389 (2008).

Defendants contend Plaintiff's Age Discrimination Claims are time-barred because she did not file suit until March 2024, despite receiving a right-to-sue letter from the EEOC on December 6, 2022. (Support Memo at 18-19.) Plaintiff, however, does not explicitly allege the right-to-sue letter encompassed age discrimination; she alleges it included "religious and/or other discrimination." (See SAC ¶¶ 29-30.)

Even assuming the Age Discrimination Claims are properly before the Court, the SAC's basis for the ADEA and NYSHRL allegations appear to rest solely upon speculation based in Plaintiff's "older" and "highly paid" status. (See SAC ¶ 12.) The SAC contains no well-pleaded allegations that age played any role—let alone a but-for role—in any adverse employment action taken against Plaintiff. Because blind speculation as to motives cannot serve as the basis for a well-pleaded claim, Defendants' Motion is GRANTED as to the Age Discrimination Claims under both the ADEA

and NYSHRL.

E. **Negligence Claim**

As with the other State Law Claims, Plaintiff may assert the Negligence Claim only to the extent it accrued after March 29, 2023. To assert a negligence claim against a municipality, a plaintiff must plead the existence of a "special relationship" between herself and the municipality. Estate of Sauickie by Orr v. City of N.Y., No. 17-CV-2662, 2018 WL 3222534, at *3 (S.D.N.Y. July 2, 2018). A "special relationship" exists where:

> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

Id. (quoting Cuffy v. City of N.Y., 505 N.E.2d 937, 940 (N.Y. 1987)).

Plaintiff argues the City Representation amounted to an affirmative undertaking because she relied upon it when applying for reinstatement, and that Defendants subsequently acted negligently by "fail[ing] to provide her access to the reinstatement portal despite her repeated requests." (Opp'n at 23-24.) Plaintiff cites no authority indicating that a

representation made in an unrelated proceeding, or an unanswered email, create a "special relationship" for purposes of a negligence claim, particularly given the absence of the requisite direct contact. See Sauickie, 2018 WL 3222534, at *3 (special relationship requires "some form of direct contact"). Without such direct contact, Plaintiff has not plausibly alleged a Negligence Claim; therefore, Defendants' Motion is GRANTED as to the Negligence Claim.

F. **IIED Claim**

An IIED Claim requires allegations of "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Rich v. Fox News Network, LLC, 939 F.3d 112, 122 (2d Cir. 2019). "The standard of outrageous conduct is strict, rigorous and difficult to satisfy" and will typically apply only "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation." Id. at 122-23 (quoting Scollar v. City of N.Y., 74 N.Y.S.3d 173, 178 (1st Dep't 2018); Nader v. Gen. Motors Corp., 255 N.E.2d 765, 770 (1970)).

As to Plaintiff's allegations that Defendants placed her fingerprints in a database, applied a Problem Code to her

application, and made the City Representation, Plaintiff has failed to allege supporting facts indicating these actions were taken with intent to cause, or disregarded the substantial probability of causing, severe emotional distress or a "deliberate and malicious campaign of harassment or intimidation." Rich, 939 F.3d at 122. Such a lack of factual allegations is fatal to Plaintiff's IIED Claim, especially in light of the "rigorous and difficult to satisfy" standard required to state an IIED claim, which leaves no room for guesswork. Id. Accordingly, Defendants' Motion is GRANTED as to the IIED Claim.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendants' Motion (ECF No. 54) is GRANTED in its entirety. As there are no remaining claims in the Action, the Clerk of Court is DIRECTED to CLOSE this case.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 10, 2026
Central Islip, New York